# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BOROUGH OF KINGSTON,<br><br>Defendant. | : : : : : : : : : : : | Civil Action No.<br><br>**COMPLAINT** |

The United States of America alleges as follows:

## I.    INTRODUCTION

1.    The United States brings this civil action for declaratory and injunctive relief against the Borough of Kingston ("Kingston" or "Defendant").  In December 2023, Kingston replaced its longstanding zoning ordinance with a new ordinance ("2023 Zoning Ordinance" or the "new ordinance") that dramatically limits development of places of worship and violates the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc–2000cc-5.

2.    The 2023 Zoning Ordinance categorically bars places of worship from opening in any residential district and allows them in commercial districts only as a Special Exception Use and only on parcels of one acre or more.

3.      Nonreligious places of assembly, such as libraries, entertainment facilities, public and commercial recreational facilities, and day cares, are allowed as of right in commercial districts, without a one-acre limitation. The 2023 Zoning Ordinance thus treats religious assemblies and institutions on less than equal terms with nonreligious assemblies or institutions, in violation of RLUIPA's equal terms provision, 42 U.S.C. § 2000cc(b)(1).

4.      Vanishingly few parcels in Kingston's commercial districts are one-acre or more. Out of approximately 4,900 total parcels in the town, only 49 meet the requirements for a place of worship. Worse, nearly all 49 parcels are developed with existing residential, commercial, or institutional uses. Historically, very few qualifying parcels have been listed for sale. In practice, there are no available qualifying parcels on which to develop a place of worship. The 2023 Zoning Ordinance thus unreasonably limits religious assemblies and institutions, in violation of RLUIPA's unreasonable limitation provision, 42 U.S.C. § 2000cc(b)(3)(B).

5.      Kingston is home to a growing Chabad Orthodox Jewish ("Chabad") community, which needs to establish new religious facilities like synagogues and mikvahs (ritual baths) within walking distance of their homes, as required by their religious beliefs, and whose places of worship do not require significant acreage.

As a result of the 2023 Zoning Ordinance, this community has struggled to find sufficient suitable places to meet its religious needs.

## II.    JURISDICTION AND VENUE

6.    The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. § 2000cc-2(f).

7.    Venue is proper under 28 U.S.C. § 1391(b) because the actions giving rise to this action occurred in the Middle District of Pennsylvania.

## III.    PARTIES

8.    The United States of America has the authority to bring this action under 42 U.S.C. § 2000cc-2(f).

9.    Defendant Kingston is a self-governing municipality in Luzerne County, Pennsylvania, and is governed by a Mayor and an elected legislative council ("Council").

10.    The Council has authority to enact and amend municipal legislation such as Kingston's 2023 Zoning Ordinance. It also makes final decisions on Conditional Use permit applications.

11.    Kingston's Zoning Hearing Board makes final decisions on whether to approve or deny Special Exception Use permit and variance applications. It also hears appeals from decisions made by Kingston's Zoning Officer.

12. The Zoning Officer enforces Kingston's zoning ordinance, reviews and approves zoning permits, issues zoning violations, and participates in proceedings before the Zoning Hearing Board, Planning Commission, and Council.

13. Kingston's Planning Commission has authority to review and make recommendations on Conditional Use permit applications, as well as Special Exception Use permit applications that address new construction or changes to nonconforming use. It also proposes and reviews amendments to the zoning ordinance.

14. A full-time Municipal Administrator is responsible for the daily management of Kingston.

15. Kingston is a "government" as defined by RLUIPA, 42 U.S.C. § 2000cc-5(4)(A)(i).

## IV.    FACTUAL ALLEGATIONS

### The Chabad Jewish Community in Kingston

16. During the early and mid-Twentieth Century, Wilkes-Barre had a thriving Orthodox Jewish community. As industry around the region dwindled, the Orthodox community largely moved out of the area. The flood of 1972 also had an enormous impact on the community.

17. In or around 2013, the first Orthodox Jewish synagogue in Kingston in recent times, Bas Tsvi Yosef, opened at 17 Second Avenue. The following

photographs reflect the exterior of the synagogue (left) and its primary worship space (right).

 

18.    Since then, the Orthodox Jewish population in Kingston has grown, primarily as a result of families moving from New York and elsewhere.

19.    Fueled by restrictions in urban areas in place during COVID-19, the growth of the Orthodox Jewish population rapidly accelerated, starting in 2020.

20.    This growth was recognized, for example, in a November 6, 2020, article in local newspaper Citizen's Voice reporting that the Bas Tsvi Yosef congregation planned to open a second synagogue, kosher market, and deli at a new location because of the "influx of Hasidic Jews moving into the area," and had purchased the property at 425 Tioga Avenue for this purpose.[1] The following photograph shows this new property when it was for sale.

---

[1] *https://www.citizensvoice.com/2020/11/06/new-synagogue-kosher-market-and-deli-planned-in-kingston* (November 6, 2020) (last visited February 3, 2026).



21.     In or around February 2021, Kingston began the process of replacing its zoning ordinance.

22.     Soon thereafter, in or around the spring of 2021, the Chabad community completed its renovations at 425 Tioga Ave., and opened the second Chabad synagogue in Kingston, known as Beis Moshe. Beis Moshe also includes a kosher supermarket on-site. The following photographs reflect Beis Moshe now: its primary worship space (top), the kosher supermarket (middle left), additional worship space adjacent to the primary space (middle right), and exterior (bottom).



 



23.    A national Chabad organization recently described Kingston's Chabad community as experiencing a "[b]reathtaking expansion and astonishing growth."[2]

24.    Jewish groups moving into Kingston include Jews from the Chabad-Lubavitch (or Chabad) movement. Chabad is a major movement within the historical mainstream Jewish tradition, founded in the mid-18th century with roots in the Chassidic movement.

---

[2] *https://anash.org/kingston-pa-the-meteoric-growth-of-a-small-community* (December 31, 2023) (last visited February 3, 2026).

25.    Members of Chabad tend to be highly observant in all areas of their life, including a focus on study of the Torah; prayer; mitzvot (divine commandments); and following Halachah, the collective body of Jewish law.

26.    Members of Chabad, like other Orthodox Jews, also tend to follow rules of Kashruth, the body of Jewish law concerning the preparation and eating of food and use of ritual objects related to food, as well as Shabbat or Sabbath, including prohibitions on work, driving, and using electricity.

27.    Jewish religious law prohibits the use of automobiles or any other powered vehicle on the Sabbath and all major Jewish holidays. Members of the Chabad community must walk to their place of worship on the Sabbath and holy days. This applies to congregants of all ages and degrees of mobility, in all weather conditions throughout the year.

28.    In accordance with their religious beliefs and customs, many members of Chabad attend places of worship to worship and study on a daily basis, including on the Sabbath and major Jewish holidays.

29.    For these reasons, a Chabad place of worship must be located in relatively close proximity to the homes of its congregants.

30.    In accordance with their religious beliefs and customs, members of Chabad may also use a mikvah, which is a ritual bath, on weekdays, the Sabbath, and or high holidays to achieve religious purity. A mikvah is so critical to the

religious practices of married women that a Chabad community cannot exist if there is no mikvah.

31.    In Kingston, there is a women's mikvah called Ritualrium Mikvah, at 139 Third Avenue, which existed prior to the 2023 Zoning Ordinance and is in the process of being replaced with a larger facility using the same lot and a newly acquired adjoining lot. The following photographs show one of the private changing areas (left) and the waiting room/lobby (right). (Photos of the sacred mikvah space itself are not shown.)

 

32.    In accordance with their religious beliefs and customs, Chabad children attend religious schooling with other children of the same sex.

33.    Kingston is home to one of the fastest growing Chabad communities in the United States.

34.    In 2014, there were approximately 10-12 Chabad families in Kingston.

35.    In 2018-2020, there were approximately 60-70 Chabad families in Kingston.

36.    By 2023, there were approximately 150-160 Chabad families in Kingston.

37.    Now, there are approximately 250-300 Chabad families—approximately 1,000 individuals, about half of whom are children—in Kingston.

**Kingston's 1977 Zoning Ordinance**

38.    The prior version of Kingston's zoning ordinance was enacted in 1977 and codified at § 181 of Kingston's Municipal Code ("1977 Zoning Ordinance").

39.    Its purpose was "to provide the municipality with procedures which will assist in directing its growth and development in accordance with local needs and desires." 1977 Zoning Ordinance § 181-1(A), Community development objectives.

40.    The 1977 Zoning Ordinance was amended in 1986 to define "semipublic uses" as "[c]hurches, Sunday schools, parochial schools, colleges, hospitals, and other institutions of an educational, religious, charitable or philanthropic nature." *Id*. § 181-8 (Definitions) (added 7-7-1986).

41.    Under the 1977 Zoning Ordinance, "semipublic uses" were allowed as a Special Exception Use in all residential districts and were allowed as a permitted use in commercial districts. *Id*. § 181-15, Schedules I and II.

42.    Under the 1977 Zoning Ordinance, there was no minimum acreage requirement for semipublic uses or places of worship, other than the general lot size requirement applicable to all uses in the C-3 district of 100 feet minimum front and 100 feet minimum depth (for a total of 10,000 square feet, which is less than a quarter of an acre). *Id*. § 181-15, Schedule II.

43.    In sum, from approximately 1986 until 2023, places of worship and religious (parochial) schools were allowed as of right in commercial districts and allowed as Special Exception Uses in all residential districts, with no one-acre lot size requirement.

## Development of Kingston's 2023 Zoning Ordinance

44.    In or around early 2021, Kingston decided to replace its 1977 Zoning Ordinance.

45.    On March 1, 2021, the Council voted to authorize Kingston to contract with John R. Varaly, of Varaly Associates, LLC, member of the American Institute of Certified Planners, to develop a new zoning ordinance, which later became the 2023 Zoning Ordinance.

46.    Kingston formed a committee to work with Mr. Varaly. The committee included Mayor Jeffrey Coslett, Zoning Officer David Yefko, Code Enforcement Officer Robert Suchoski, Municipal Administrator Paul Keating, Zoning Hearing Board Chairman Tom O'Connor, and Councilwoman Nancy Cooper.

47.     At a Council meeting on July 6, 2022, Mr. Varaly presented an interim update on the committee's work. The meeting minutes state: "Jack Varaly, Consultant on the new Zoning Ordinance, discussed the draft that is being prepared. Some of the things that are changing or added in are as follows; restrictions on 'big box stores,' exotic animals, short stay rentals, and definitions. Mr. Varaly said that the biggest changes were the definitions. They were updated for current times." There is no documented discussion at this meeting regarding changes to places of worship.

48.     At a Council meeting on March 6, 2023, Mr. Varaly and Zoning Officer Yefko presented the new ordinance. Mr. Varaly stated: "[The] existing Zoning Ordinance is over 40 years old, and it's been very minimally changed over the years. So the current Zoning Ordinance is a rewrite of [the] entire Ordinance. There was very little that was in [the] old Ordinance that was retained in the new." Mr. Varaly also said each new article "is more user-friendly." Mr. Varaly thus suggested that the purpose for amending the existing ordinance was one of modernization.

49.     At this meeting, Mr. Varaly also said that the new ordinance's community development objectives are important because the "special exceptions" beg consideration of how a proposed project "fit[s] in with the community development objectives" of Kingston.

12

50.     At this meeting, Zoning Officer Yefko said the committee "worked tirelessly for over a year and a half" and "came to a consensus on every item that we reviewed."

51.     There is no documented discussion at this March 6, 2023, meeting regarding changes to places of worship.

52.     On December 20, 2023, the Council passed the 2023 Zoning Ordinance.

**Restrictions on Places of Worship and Religious Schools**
**in the 2023 Zoning Ordinance**

53.     The 2023 Zoning Ordinance divides Kingston into several different zoning districts, *i.e.* residential, commercial, and manufacturing, as shown on the official Zoning Map. The Zoning Map is part of the 2023 Zoning Ordinance and indicates and delineates the zoning districts (shown in the following image in reduced size, for illustrative purposes only).



54.     For each zoning district, the 2023 Zoning Ordinance designates which land uses are permitted as of right and which are permitted only upon the issuance of a Special Exception Use or Conditional Use permit.

55.     A "Permitted" Use is allowed by right and requires no discretionary approval from the Council or Zoning Hearing Board. 2023 Zoning Ordinance, § 501.A.

56.     A "Non-permitted" Use is not permitted in a particular district. *Id.* § 501.B.

57.     A "Special Exception" Use is defined as "[a] use which may only be permitted in a particular zoning district by special approval, granted by the Zoning Hearing Board in accordance with the applicable provisions of this Ordinance." *Id.*

14

§ 203; *see also id*. § 501.C. (similar); *id*. § 1410 (Special Exception Use is a discretionary permit that can only be granted by the Zoning Hearing Board).

58.    When applications for Special Exception Use permits involve new construction or changes to nonconforming uses, they are also referred to the Planning Commission for its review, comments, and recommendations. *Id*. § 602.

59.    Special Exception Use permit applications must satisfy several criteria including, but not limited to, that the proposed use: "not jeopardize community development objectives;" "not adversely affect the public health, safety and welfare;" "be compatible with adjoining development and the character of the zoning district;" and "not adversely affect neighborhood property values and aesthetic characteristics in the neighborhood." *Id*. § 1410.2.

60.    Applicants for a Special Exception Use permit must file "a Zoning Permit Application, an Application for Hearing before the Zoning Hearing Board, a copy of the deed to the property that includes the Property Identification Number, of the subject parcel and a site plan drawn at scale." *Id*. §§ 602-603.

61.    Special Exception Use permit applications must also include the location and size of all buildings; off-street parking and unloading areas; all open spaces; traffic access to the site; all streets within 100 feet of the site; all bodies of water within 100 feet of the site; flood plans; and storm water information for all new construction (in addition to compliance with the Kingston Stormwater

Management Ordinance); topography data by a professional land surveyor or professional engineer; if applicable, a soil erosion and sentiment plan; a narrative that outline and describes all proposed uses or development of the site; and any other information required by the Zoning Hearing Board. *Id*. § 603.

62.    The Zoning Hearing Board also has the authority to require applicants for Special Exception Use permits to prepare an "Impact Analysis" on a particular aspect of the application or the potential effect of surrounding properties. *Id*. § 604.

63.    "Variance" is defined as "[a] modification (or waiver) of a particular regulation or requirement from the terms and requirements of this Ordinance, granted by the Kingston Zoning Hearing Board in accordance with the applicable provisions of this Ordinance." *Id*. § 203.

64.    The 2023 Zoning Ordinance drastically changed and restricted where and how places of worship and religious schools could be developed.

65.    "Places of Worship" are defined as "[a] building or portion thereof used for religious services either on a permanent or periodic basis, including churches, synagogues, mosques, and similar edifices." *Id*. § 203.

66.    "School" is defined as "[a] facility that provides a curriculum of elementary and secondary academic instruction, including kindergartens, elementary schools, junior high schools, and high schools that are licensed by the State and including schools which provide trade or vocational training." *Id*.

16

67.    The 2023 Zoning Ordinance includes a Nonresidential Use Table, listing over 100 types of uses and whether they are Permitted Uses (P), Conditional Uses (C), Special Exception Uses (SE), or Non-permitted Uses (N) in each zoning district. *Id*. § 502.2.

68.    Table 1 contains excerpts from the Nonresidential Use Table, reflecting selected uses in the three commercial districts (C-1, C-2, and C-3) and the manufacturing district (M-1):

**Table 1: 2023 Zoning Ordinance § 502.2: Nonresidential Use Table (Excerpts)**

|  | **C-1** | **C-2** | **C-3** | **M-1** |
|---|---|---|---|---|
| Dance, Gymnastic, Martial Arts & Yoga Studios | N | P | P | P |
| Entertainment Facilities | N | P | P | P |
| Fitness Club or Health Spa | P | P | P | P |
| Funeral Home | N | P | P | N |
| Library | N | P | N | N |
| Municipally Owned Building | P | P | P | P |
| **Place of Worship** | **SE** | **SE** | **SE** | **N** |
| Recreational Facilities, Commercial | N | P | P | P |
| Recreational Facilities, Public | P | P | P | P |

**Key:**
C-1 = Neighborhood Commercial
C-2 = Community Commercial          SE = Special Exception
C-3 = General Commercial            P = Permitted Use
M-1 = Manufacturing                 N = Non-permitted Use

69.    Under the Nonresidential Use Table, places of worship are Non-permitted Uses in all residential districts (not shown in Table 1). 2023 Zoning Ordinance § 502.2.

70.    Under the Nonresidential Use Table, places of worship are Special Exception Uses in the three commercial districts and are Non-permitted Uses in the Manufacturing district (shown in Table 1). *Id*.

71.    In contrast, many comparable nonreligious assembly uses are Permitted Uses in one or more districts. *Id*.

72.    For example, a library is a Permitted Use in C-2 districts; entertainment facilities, which include "a movie theater, live theater performances, an arcade, bowling alley, billiard hall, roller skating rink or similar facilities," *id*. § 203, are Permitted Uses in C-2, C-3, and M-1 districts; public recreational facilities are Permitted Uses in C-1, C-2, and C-3 districts; and commercial recreational facilities and day cares are Permitted Uses in the C-2 and C-3 districts (as shown in Table 1). *Id*. § 502.2.

73.    The New Zoning Ordinance imposes additional "Supplemental Regulations" on places of worship, requiring that "[a] minimum lot area of one (1) acre shall be required for the use." *Id*. § 801.34.

74.    If the place of worship includes an accessory use consisting of a primary or secondary school, day care center, or single-family dwelling, an additional acre (*i.e.*, a total of two acres) is required. *Id*.

75.    Additional unique landscaping and shrubbery requirements apply to places of worship that do not apply to comparable nonreligious assembly uses. *Id*.

76.     In contrast, none of the comparable nonreligious assembly uses in Table 1 have a minimum one- or two-acre (or any) minimum lot size requirement in the commercial districts. *Id*. § 503. An applicant who wants to open a library, a recreational facility, an entertainment facility like a theater or similar facility, a day-care, or even a new building to hold Council meetings would not need the minimum acreage required for places of worship.

77.     The 2023 Zoning Ordinance imposes more onerous parking requirements on places of worship than on nonreligious places of assembly. It requires places of worship to have one parking space for every four seats in the main assembly room or one space for every 12 feet of bench length or, if no fixed seating, one space for every thirty square feet of gross floor area. *Id*. § 1021.

78.     In contrast, entertainment facilities are only required to have one parking space for every hundred square feet of gross floor area. *Id*.

79.     Nonprofit socials halls and clubs are only required to have one space for every two hundred square feet of gross floor area. *Id*.

80.     Places of public or private assembly, including auditoriums and meeting halls are required to have one parking spot for every four seats or, if no fixed seats, one space for each fifty square feet of gross floor area. *Id*.

81.     Indoor recreational facilities are only required to have one space for every one hundred square feet of gross floor area. *Id*.

82.    The changes brought by the new ordinance could also impact existing religious facilities. For example, an existing religious facility that was lawfully established prior to the enactment of the new ordinance might be rendered a "nonconforming use." *See id.* § 902.1. In that case, the religious facility could not be enlarged, reconstructed, structurally altered, or changed without a Special Exception Use permit. *Id.* §§ 904, 907. Even then, an expansion would be required to comply with "all area and bulk requirements applicable to conforming buildings in the zone," meaning that a religious facility located on a parcel smaller than an acre in the C-1, C-2, or C-3 districts would not be permitted to expand.

83.    The 2023 Zoning Ordinance also drastically changed how and where religious schools can be developed. Schools are now only allowed as Conditional Uses in the C-2 and C-3 districts on parcels that are three acres or more. *Id.* §§ 502.2, 801.43.

**One-Acre Parcels in Kingston**

84.    According to data produced by Kingston, out of nearly 800 parcels located in the commercial districts (C-1, C-2, and C-3), only 49 parcels are one acre or more in size.

85.    This means that only a small fraction of parcels even meet the zoning district and acreage requirements necessary to develop a place of worship.

86.     Virtually all of those 49 parcels are currently occupied with existing residential, commercial, or institutional uses, including medical offices, apartment buildings, assisted living facility, senior care centers, nursing home, office buildings, public parks, a hospital, bank, Kingston's "Hoyt" library, shopping centers, automative repair facilities, public and commercial recreational facilities, grocery stores, gyms, veterinary hospitals, and other uses—or are vacant lots such that it would not be feasible for the Chabad community to purchase, build, and develop them for religious uses.

87.     According to historical records from the Multiple Listing Service, only *eight* parcels in a commercial zoning district of one-acre or more have been listed for sale in the last twenty years.

88.     One qualifying parcel, over 3 acres in size, was recently available for sale at a price of over four million dollars. The Chabad community considered this parcel for a place of worship but did not have the financial means to purchase it.

89.     Of the fourteen places of worship currently operating in Kingston, as listed on Kingston's website, only one, Dorranceton Methodist Church, is on a parcel of one or more acres.

**Impact of 2023 Zoning Ordinance on the Chabad Community**

90.     The only three Chabad places of worship currently permitted in Kingston—Bas Tzvi Yosef Synagogue, Beis Moshe Synagogue, and Ritualrium

21

Mikvah, all developed and permitted prior to the 2023 Zoning Ordinance, as described above—no longer suffice for the growing community.

91.    As a result of the 2023 Zoning Ordinance, the Chabad community in Kingston has struggled to find sufficient suitable places for prayer, religious study, religious schools, and mikvahs.

92.    For example, in or around July 2024, members of the Chabad community, who had been worshipping in a basement in a private home and were looking for a more appropriate, permanent space for religious use, purchased and developed another property, located at 445 Wyoming Avenue, which is in Kingston's C-2 commercial district on a less-than-one-acre plot. They had hoped to open it starting in or around October 2024 for use as a religious facility, including for religious study, prayer, holiday and other services, and community to be called Cheder Sheni.

93.    The new zoning ordinance, however, effectively prohibits the development of new places of worship in the C-2 district. Because Cheder Sheni is filled with furniture, books, and space for religious study, and because a library is permitted as of right in the C-2 district, the community had to seek a permit to open the property as a library, which it did on or around October 9, 2024. The following photos show the interior of the space, used for religious study.

 

94.     A Kingston official visited Cheder Sheni on or around October 17, 2024, during the eight-day-long religious holiday of Sukkot where the community had gathered and determined that the building was not being used as library. Kingston then threatened to revoke the zoning permit and shut down the building.

95.     By letter dated October 22, 2024, an attorney representing the building owner requested that Kingston not interrupt members of the Chabad community from celebrating the remaining days of this sacred religious holiday at Cheder Sheni.

96.     By letter dated October 29, 2024, Kingston responded, stating that the property was a place of worship and only allowed under a Special Exception Use permit.

97.    As a result, the Chabad community fear their ability to gather and pray at Cheder Sheni could be taken away at any point with the looming possibility of permit revocation. The community is and has been hampered from using the property to its full desired use, to conduct religious activities including celebrating holidays.

98.    For another example, in 2019-2020, a Chabad rabbi purchased two properties in Kingston: 44 Pierce Street, to be used as a "yeshiva" (a traditional Jewish educational institution) and office space, and 239 Pierce Street, to be used as housing for individuals attending the yeshiva. *See Anash, Inc. v. Borough of Kingston*, No. 3:24-cv-01955, 2024 WL 5294369, at *1 (M.D. Pa. Dec. 19, 2024).

99.    In April 2024, Kingston issued violation notices to the property owner that both uses were unlawful in the C-2 district where they are located. *Id*. at *2.

100.    The plaintiffs filed a complaint and motion for preliminary injunction in late 2024, including allegations that Kingston's conduct violated RLUIPA. On December 19, 2024, the district court denied plaintiffs' motion for a preliminary injunction. *Id*. The plaintiffs appealed the decision to the Court of Appeals for the Third Circuit, where the appeal is pending.

101.    Because of the growing community and the limitations on expanding existing places of worship or opening new places of worship under the new ordinance, the Chabad community has had to find additional temporary locations

to gather to pray and practice their faith, currently including spaces in an office building and in private homes including a garage and a basement.

102.   Over 500 pre-school, elementary school, and middle school children of Chabad families live in Kingston.

103.   As Chabad boys and girls are separately educated per their religious tenets, the community operates two elementary schools, jointly referred to Cheder Menachem. The boys' school, at 715 Schuyler Avenue in Kingston, was purchased from the public school district in August 2023; and the girls' school with a co-ed preschool is a rented property in the neighboring municipality of Wilkes-Barre, Pennsylvania. The following photos show the boys' school's exterior (left) and a mural near its interior staircase (right).



104.   The buildings are both starting to overcrowd with children, forcing the Chabad community to search for other property to meet their growing space needs.

105.   The new ordinance limits new schools to the C-2 or C-3 districts, as Conditional Uses only, and requires them to be on a minimum lot size of 3 acres. 2023 Zoning Ordinance §§ 502.2, 801.43. This effectively prohibits the Chabad community from opening new religious schools needed in Kingston close to their residential areas and for a reasonable sum.

## CAUSES OF ACTION

## COUNT I: VIOLATION OF RLUIPA'S EQUAL TERMS PROVISION

106.   The allegations above are incorporated by reference.

107.   Kingston acted in violation of RLUIPA by "impos[ing] or implement[ing] a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1).

108.   Kingston's 2023 Zoning Ordinance, on its face and as applied by Kingston, treats religious assembly uses on less than equal terms with nonreligious assemblies or institutions.

## COUNT II: VIOLATION OF RLUIPA'S UNREASONABLE LIMITATION PROVISION

109.   The allegations above are incorporated by reference.

110.   Kingston's enactment and application of the 2023 Zoning Ordinance, and Kingston's conduct described in this Complaint, constitute the imposition or implementation of a land use regulation that unreasonably limits religious

26

assemblies, institutions, or structures within a jurisdiction in violation of RLUIPA, 42 U.S.C. § 2000cc(b)(3)(B).

## PRAYER FOR RELIEF

**WHEREFORE,** the United States prays that this Court enter an order that:

A.   Declares that Kingston's policies and practices, as alleged herein, violate RLUIPA;

B.   Enjoins Kingston, its officers, employees, agents, successors, and all other persons in concert or participation with it, from:

    i.   Treating religious assemblies and institutions, and their members, on less than equal terms with nonreligious assemblies or institutions; and

    ii.   Unreasonably limiting religious assemblies and institutions within its jurisdiction;

C.   Enjoins Kingston, its officers, employees, agents, successors and all other persons in concert or participation with it, from enforcing the provisions of the 2023 Zoning Ordinance that treat religious assemblies or institutions on less than equal terms with nonreligious assemblies or institutions or unreasonably limit religious assemblies or institutions within its jurisdiction;

D.   Requires Kingston, its officers, employees, agents, successors, and all other persons in concert or participation with it, to take such actions, including

27

amending the 2023 Zoning Ordinance, as may be necessary to prevent the recurrence of such unlawful conduct in the future, including:

 i. Ensuring that religious assemblies or institutions are not treated on less than equal terms with nonreligious assemblies or institutions;

 ii. Ensuring that religious assemblies, institutions, or structures are not unreasonably limited in Kingston;

 iii. Providing and undergoing RLUIPA training;

 iv. Establishing procedures to address complaints of RLUIPA violations; and

 v. Maintaining records and submitting reports to the United States regarding its compliance with RLUIPA and the Court's order; and

E. Awards such other appropriate relief as the interests of justice require.

Dated: February 4, 2026

Respectfully submitted,

PAMELA BONDI
Attorney General

BRIAN M. MILLER
United States Attorney
Middle District of Pennsylvania

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

CARRIE PAGNUCCO
Chief
Housing and Civil Enforcement Section

s/ *Michael J. Butler*
Michael J. Butler
Civil Rights Coordinator
Assistant United States Attorney
Pa 81799
1501 N. Sixth Street, Suite 202
Harrisburg, PA 17102
Tel: (717) 221-4482
Michael.J.Butler@usdoj.gov

s/ *Katie Legomsky*
NOAH D. SACKS
California Bar No. 246694
KATIE LEGOMSKY
California Bar No. 275571
Trial Attorneys
Housing & Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M St. NE, 8th Floor
Washington, DC 20530
Tel: (202) 598-6587
Kathryn.Legomsky@usdoj.gov

Attorneys for Plaintiff United States of America