# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Civil Action No. 3:26-cv-00269 |
| Plaintiff, | : | |
| v. | : | (Mehalchick, J.) |
| BOROUGH OF KINGSTON, | : | |
| Defendant. | : | **Filed Electronically** |

## CONSENT ORDER

### I.    Introduction

1.    The United States ("Plaintiff") brought this action to enforce the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc-2000cc-5.

2.    In 2023, the Borough of Kingston, Pennsylvania ("Kingston" or "Defendant") replaced its longstanding zoning ordinance with a new ordinance ("2023 Zoning Ordinance") that limits development of places of worship by categorically barring them from opening in any residential district and allowing them in commercial districts only as a Special Exception Use and only on parcels of one acre or more.

3.    In its Complaint, the United States alleges that, through the 2023 Zoning Ordinance, Kingston: (a) treats religious assemblies and institutions on less

than equal terms with nonreligious assemblies or institutions, in violation of 42 U.S.C. § 2000cc(b)(1) and (b) unreasonably limits religious assemblies and institutions, in violation of 42 U.S.C. § 2000cc(b)(3)(B).

4.    Kingston is home to a growing Chabad Orthodox Jewish ("Chabad") community, which needs to establish new religious facilities like synagogues and mikvahs (ritual baths) within walking distance of their homes, as required by their religion, and whose places of worship do not require significant acreage. The United States alleges that, as a result of the 2023 Zoning Ordinance, this group has struggled to find sufficient suitable places to meet its religious needs.

5.    In June 2025, the United States gave Kingston notice of its investigation of alleged violations of RLUIPA by Kingston as set forth herein, and Kingston cooperated fully with that investigation.  Kingston maintains that it has complied with its obligations under RLUIPA but desires to resolve this Action without prolonged litigation and to ensure that Kingston's Zoning Ordinance fully complies with RLUIPA. Nothing herein shall be construed as an admission by Kingston that it violated RLUIPA, an allegation it continues to deny.   Therefore, the Plaintiff and the Defendant (the "Parties") have voluntarily agreed to resolve the United States' claims against Kingston by entering into this Consent Order (the "Order"), as indicated by the signatures below.

## II.    Stipulated Facts

6.    Kingston is a self-governing municipality in Luzerne County,

Pennsylvania, and is governed by a Mayor and an elected legislative council

("Council").

7.    The Council has authority to enact and amend municipal legislation

such as Kingston's 2023 Zoning Ordinance.

8.    Kingston is responsible for the acts and omissions of its agents and

agencies.

9.    The prior version of Kingston's zoning ordinance was enacted in 1977

and codified at § 181 of Kingston's Municipal Code ("1977 Zoning Ordinance").

10.    The 1977 Zoning Ordinance was amended in 1986 to define

"semipublic uses" as "[c]hurches, Sunday schools, parochial schools, colleges,

hospitals, and other institutions of an educational, religious, charitable or

philanthropic nature." *Id*. § 181-8 (Definitions) (added 7-7-1986).

11.    Under the 1977 Zoning Ordinance, "semipublic uses" were allowed as

a Special Exception Use in all residential districts and were allowed as a permitted

use in commercial districts. *Id*. § 181-15, Schedules I and II.

12.    Under the 1977 Zoning Ordinance, there was no minimum acreage

requirement for semipublic uses or places of worship (other than the general lot

3

size requirement applicable to all uses in one commercial district, which totaled

less than a quarter-acre). *Id.* § 181-15, Schedule II.

13.    Thus, from approximately 1986 until 2023, places of worship and

religious schools and institutions were allowed as of right in commercial districts

and allowed as Special Exception Uses in all residential districts, with no one-acre

lot size requirement.

14.    In or around early 2021, Kingston decided to replace its 1977 Zoning

Ordinance.

15.    The proposed new ordinance was prepared by an outside consultant in

consultation with a committee of Kingston representatives and was presented at a

Council meeting on March 6, 2023.

16.    On December 20, 2023, the Council passed the 2023 Zoning

Ordinance.

17.    The 2023 Zoning Ordinance had the effect of changing and restricting

where and how places of worship and religious schools could be developed.

18.    The 2023 Zoning Ordinance includes a Nonresidential Use Table,

listing over 100 types of uses and whether they are Permitted Uses, Conditional

Uses, Special Exception Uses, or Non-permitted Uses in each zoning district. 2023

Zoning Ordinance § 502.2.

19.     Under that table, places of worship are Non-permitted Uses in all residential districts; Special Exception Uses in Kingston's three commercial districts; and Non-permitted Uses in the Manufacturing district. *Id.*

20.     In contrast, many comparable nonreligious assembly uses—such as libraries, entertainment facilities, public recreational facilities, and commercial recreational facilities and day cares—are Permitted Uses in one or more districts. *Id.*

21.     The 2023 Zoning Ordinance also imposes supplemental regulations on places of worship, requiring a minimum lot area of one acre. *Id.* § 801.34. If the place of worship includes an accessory use consisting of a primary or secondary school, day care center, or single-family dwelling, then an additional acre (*i.e.*, a total of two acres) is required. *Id.* Additional landscaping and shrubbery requirements apply to places of worship. *Id.*

22.     In contrast, nearly all comparable nonreligious assembly uses do not have a minimum one- or two-acre (or any) minimum lot size requirement in the commercial districts. *Id.* § 503.

23.     The 2023 Zoning Ordinance imposes more onerous parking requirements on places of worship than on certain nonreligious places of assembly. *Id.* § 1021.

24.    The United States alleges that changes brought by the 2023 Zoning Ordinance could also impact existing religious facilities. For example, an existing religious facility that was lawfully established prior to its enactment might be rendered a "nonconforming use." *See id*. § 902.1. In that case, the United States contends, the facility could not be enlarged, reconstructed, structurally altered, or changed without a Special Exception Use permit. *Id*. §§ 904, 907. Even then, an expansion would be required to comply with "all area and bulk requirements applicable to conforming buildings in the zone," meaning that a religious facility located on a parcel smaller than an acre in a commercial district would not be permitted to expand.

25.    Finally, the 2023 Zoning Ordinance also changed how and where religious schools can be developed.  It only allows schools as Conditional Uses in two commercial districts on parcels that are three acres or more. *Id*. §§ 502.2, 801.43.

26.    According to data produced by Kingston, out of nearly 800 parcels located in the three commercial districts, only 49 parcels are one acre or more in size.  This means that only a small fraction of parcels even meet the zoning district and acreage requirements necessary to develop a place of worship.

27.    The United States alleges that virtually all of those 49 parcels are occupied with existing residential, commercial, or institutional uses, including

6

medical offices, apartments, an assisted living facility, senior care centers, a

nursing home, office buildings, public parks, a hospital, a bank, Kingston's "Hoyt"

library, shopping centers, automative repair facilities, public and commercial

recreational facilities, grocery stores, gyms, veterinary hospitals, and other uses—

or are vacant lots such that it would not be feasible for the Chabad community to

purchase, build, and develop them for religious uses.

28.    Kingston is home to a fast-growing Chabad community.

29.    Members of Chabad tend to be highly religiously observant in all

areas of their life.

30.    For example, their religious law prohibits working, using electricity,

and using automobiles or any other powered vehicle on the Sabbath and all major

Jewish holidays. Members of the Chabad community must walk to their place of

worship on the Sabbath and holy days; and many also attend places of worship to

worship and study on a daily basis. This applies to congregants of all ages and

degrees of mobility, in all weather conditions throughout the year.

31.    For these reasons, a Chabad place of worship must be in relatively

close proximity to the homes of its congregants.

32.    In accordance with their religious beliefs and customs, members of

Chabad may use a mikvah, which is a ritual bath, on weekdays, the Sabbath, and or

high holidays to achieve religious purity. A mikvah is so critical to the religious

practices of married Chabad women that a Chabad community cannot exist if there is no mikvah.

33.    In accordance with their religious beliefs and customs, Chabad children attend religious schooling with other children of the same sex.

34.    The United States alleges that only three Chabad places of worship currently permitted in Kingston—Bas Tzvi Yosef Synagogue, Beis Moshe Synagogue, and Ritualrium Mikvah—were all developed and permitted prior to the 2023 Zoning Ordinance and no longer suffice for the growing community.

35.    As a result of the 2023 Zoning Ordinance, the United States alleges that the Chabad community in Kingston has struggled to find sufficient suitable places for prayer, religious study, religious schools, and mikvahs.

### III.    Statement of Agreement on Legal and other Terms

36.    The Parties agree that the Borough of Kingston constitutes a "government" under RLUIPA, 42 U.S.C. §§ 2000cc-5(4)(A).

37.    The Parties agree that the 2023 Zoning Ordinance is a "land use regulation" that "limits or restricts a claimant's use or development of land" under RLUIPA, 42 U.S.C. §§ 2000cc-5(5).

38.    The Parties agree that the Chabad Orthodox Jewish community is a "religious assembly or institution," within the meaning of RLUIPA, for purposes of 42 U.S.C. § 2000cc(b)(1), (b)(3)(B).

Therefore, it is ORDERED, ADJUDGED, and DECREED as follows:

## IV.    Jurisdiction And Venue

39.    The Court has jurisdiction over this action, and may grant the relief sought herein, under 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. § 2000cc-2(f).

40.    Venue is proper under 28 U.S.C. § 1391(b) because the actions giving rise to this action occurred in the Middle District of Pennsylvania.

## V.    Injunctive Relief

### A.    Prohibited Conduct

41.    The Defendant, its agents, agencies, subdivisions, entities, employees, successors, and all other persons or entities in active concert or participation with the Defendant are enjoined from:

  a. Imposing or implementing a land use regulation in a manner that treats a religious assembly or institution on less than equal terms than a nonreligious assembly or institution;

  b. Imposing or implementing a land use regulation in a manner that unreasonably limits religious assemblies, institutions, or structures within a jurisdiction;

  c. Otherwise engaging in any conduct that violates RLUIPA; or

  d. Coercing, intimidating, threatening, interfering with, or retaliating against any person in the exercise or enjoyment of, or on account

9

of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by RLUIPA.

## B. Amendments of Kingston's Zoning Ordinance

42.    Within 120 days of entry of this Consent Order, Kingston must have completed the necessary steps to amend its zoning ordinance and effectuate the amendments required by this Order.

43.    The amendments to Kingston's zoning ordinance required by this Order are as follows:

   a.   Change Places of Worship from Special Exception Uses to Permitted Uses in all commercial districts, Nonresidential Use Table, § 502.2;

   b.   Change Places of Worship from Non-permitted Uses to Special Exception Uses in all residential districts, Nonresidential Use Table, § 502.2;

   c.   Remove the acreage requirements for Places of Worship, Supplemental Regulations, § 801.34;

   d.   Remove or revise the shrubbery and landscaping requirements applicable to Places of Worship so that they are no more onerous than shrubbery and landscaping requirements (if any) applicable to

10

any comparable secular places of assembly, Supplemental
Regulations, § 801.34;

   e.  Remove or revise the parking requirements on Places of Worship
so that they are no more onerous than parking requirements
applicable to any comparable secular places of assembly, Off-
Street Parking Requirements, § 1021;

   f.  Change religious schools from Conditional Uses in selected
commercial districts to Permitted Uses in all commercial districts,
Nonresidential Use Table, § 502.2;

   g.  Change religious schools from Non-permitted Uses to Special
Exception Uses in all residential districts, Nonresidential Use
Table, § 502.2; and

   h.  Remove the acreage requirements for religious schools,
Supplemental Regulations, § 801.43.

   i.  These amendments are without prejudice to Kingston's
enforcement of applicable state Building and Fire Codes and any
other applicable local or state law or regulation in a manner that
treats religious and comparable non-religious assembly uses
equally.

11

44.    To meet the requirements of this Section of the Order, Kingston has provided a plan and proposed timeline to the United States describing the steps it will take to effectuate the amendments to its zoning ordinance within 120 days, consistent with municipal and other applicable law and subject to the United States' approval. That plan and timeline are as follows:

a.  Counsel for Kingston has engaged a land use planning firm, TCA Associates of West Chester, PA, to draft the amendments to the Zoning Ordinance required by this Consent Order. Those proposed amendments were presented to the Council in an executive session with Kingston counsel on February 2, 2026, at which time the Council voted to approve the amendments set forth in Paragraph 43 above, along with the other terms of settlement set forth in this Consent Order.

b.  By no later than February 14, 2026, Kingston will publicly advertise a public hearing to adopt the proposed amendments in accordance with Section 1304 of the Kingston Zoning Ordinance, which requires a period of no less than 30 days' public notice before such hearing.

c.  At the same time, Kingston must send a copy of the proposed amendments to the Luzerne County Planning Commission which

shall have 30 days to review, and if desired, provide comments and recommendations to the Council.  If the Luzerne County Planning Commission fails to provide any comments or recommendations, the Council may proceed to vote on the amendments without further notice.

d.  A public hearing before the Council to consider adoption of the proposed amendments will be held on or before March 16, 2026.

e.  In the event substantial changes are made to the proposed amendments at or as a result of the public hearing or input received from the Luzerne County Planning Commission or United States, the Council will be obligated to readvertise the revised amendments with at least 10 days' notice prior to voting on them, which could push the final vote to approximately April 1, 2026.  In such event, Kingston's counsel will communicate such changes to the United States within two business days to discuss the acceptability of such changes.  In the event the proposed amendments are adopted in substantially the same form as proposed, such amendments will take effect immediately following the Council's vote.

13

45.    Once this Order is in effect, counsel for Kingston will report on its progress to the United States at least every two weeks, or as frequently as needed to respond to information the United States may reasonably request, until the amendments to the zoning ordinance are passed and have become effective.

**C. Notice to Public and Future Permit Applications by Places of Worship**

46.    Within 30 days of entry of this Consent Order's entry date, Kingston will post and maintain a Public Notice of the Consent Order that describes its terms, along with a copy of the Order, in a conspicuous place in its Municipal Building as well as on its official website. The location/placement and format of the notice must be consistent with the overall location/placement and format of Kingston's other official posted notices and its official website, respectively, and are subject to approval by the United States. The text of the Public Notice of the Consent Order is at Appendix A.

47.    Additionally, upon receiving an application or inquiry by any future applicant for a permit or permits for a zoning or land use determination concerning a property intended or used for religious purposes, Kingston shall provide the applicant or the person inquiring a copy of the Public Notice of the Consent Order and a copy of the Order.

### D. Complaint Procedure

48.    Within 15 days of entry of this Order, Kingston will submit a proposed Complaint Procedure to the United States for approval.

49.    The Complaint Procedure will establish a process to address complaints by any person who believes that Kingston may have violated RLUIPA or otherwise discriminated based on religion through the enactment or implementation of its zoning or land use laws and shall include the requirements described in this paragraph. The Complaint Procedure shall also include a Complaint Form in the form of Appendix B and shall be published on its website. Kingston shall accept written and oral complaints. Upon receipt of an oral complaint, Kingston shall offer and provide, but shall not require submission of, the Complaint Form and shall provide assistance in completing and submitting the form if assistance is requested or if it is apparent to an employee or staff member of Kingston that assistance is needed.  Kingston shall respond in writing to any written or oral complaints within 15 days of its receipt of such complaint. Kingston shall accept and maintain each original written complaint, its records concerning each written or oral complaint, and any proposed or actual action taken in response to the complaint.

50.    Within 15 days of receiving the United States' approval of the Complaint Procedure, Kingston will implement this Complaint Procedure.

15

51.    On an ongoing basis, within 15 days of receiving any complaints described in this Section of the Order, Kingston must inform the United States and provide: copies of the complaint, the name and contact information of the person(s) submitting the complaint, any supporting materials or other documents associated with the complaint, any written response by Kingston to the complaint. If the complaint has not been resolved, Kingston shall report any efforts it took, or plans to take, to resolve the complaint. Kingston must provide any other information the United States may reasonably request related to such complaints within a reasonable time.

### E. Training

52.    Within 5 days of entry of this Order, Kingston will require the following persons to view the Public Notice: all employees, elected officials, other officials, contractors, consultants, or agents who have duties related to planning, zoning, permitting, construction, code enforcement, and building occupancy, including the Mayor, Municipal Administrator, Solicitor, Councilmembers, Zoning Officer(s), Code Enforcement Officer(s), Building Inspector(s), and members of and counsel to the Zoning Hearing Board, Planning Commission, and Civil Service Commission ("Covered Officials").

53.    Within 60 days of entry of this Order, Kingston will also provide live, in-person training on RLUIPA and on its obligations under the Order to all

Covered Officials, during which the trainer will provide an opportunity for them to ask questions. Kingston will retain an independent, qualified, third-party trainer to develop the curriculum and present the training, with approval by the United States. Within 30 days of entry of this Order, Kingston shall submit to counsel for the United States the name of the person(s) or organization(s) proposed to provide the training, together with copies of the professional qualifications of such person(s) or organization(s) and copies of the materials proposed for use at the training. Kingston shall bear all expenses associated with the training. Kingston shall maintain copies of the written materials provided for each training. Kingston may videorecord this training for purposes of providing the training to new Covered Officials as required by paragraph 55.

54.    Kingston shall obtain a signed statement, in the form of Appendix C, from each Covered Official stating that the person attended the training, received and understands this Order and its mandates, and understands that a violation of this Order may result in further court action against Kingston. Kingston shall provide each signed statement to the United States within 10 days of the person's training.

55.    For each newly elected, appointed, or hired Covered Official, within 30 days after such person enters office or begins service or employment, Kingston shall provide such individual the documents and training referred to in paragraphs

17

52-53 and provide their signed statement in the form of Appendix C to the United

States.

**F. Reporting, Record-Keeping, and Monitoring**

56.    In addition to the initial or one-time reporting obligations described

above, Kingston shall provide regular reports and supporting documents to the

United States every six months on its progress in complying with the terms of this

Order, except the Defendant shall submit the last report 60 days before the Order's

expiration.[1]

57.    Each six-month compliance report shall contain the following

information:

      a.    A signed declaration by the Council stating that Kingston has

          complied with Section V of this Order;

      b.    Documentation reflecting the continued posting of the Public

          Notice of the Consent Order and of the Complaint Procedure, as

          required by Sections V.C. and V.D. of this Order;

      c.    If applicable, any additional appropriate documentary evidence,

          including but not limited to the text of all new policies or

---

[1] All submissions to the United States required by this Order shall be sent via
email to the United States' counsel, unless otherwise instructed by the United
States' counsel.

18

procedures implemented as a result of the Order, demonstrating

Kingston's compliance with Section V of this Order.

58.    Within 30 days of adopting any future amendments or modifications

to the zoning ordinance or other rules, laws, or ordinances that affect religious or

nonreligious assembly or institutional land uses, Kingston shall send copies of the

enacted amendments or modifications to the United States. Any amendment or

modification must be consistent with RLUIPA.

59.    Kingston will maintain and preserve all non-privileged, pertinent

records related to the claims asserted in this Action and compliance with this

Consent Order. Upon reasonable notice, Kingston will allow the United States to

inspect and copy all such records and will provide additional information the

United States may reasonably request that is needed to assess compliance with this

Order and RLUIPA.

## VI.    Enforcement

60.    The parties shall attempt in good faith to informally resolve any

differences regarding interpretation of or compliance with this Order prior to

seeking relief from this Court.  However, if the United States believes that the

Defendant failed to timely perform any act required by this Order, or to act in

conformance with any provision, whether intentionally or not, the United States

may move the Court to impose any remedy authorized at law or equity. Remedies

include, but are not limited to, findings of contempt, an order requiring performance of such act or deeming such act to have been performed, and costs and reasonable attorneys' fees that may have been occasioned by the violation or failure to perform. Absent exigent circumstances, the United States will allow the Defendant 30 days to cure a violation of this Order once notified by the United States before moving the Court for relief.

### VII.   Termination of Litigation Hold

61.    The parties agree that, as of this Order's entry date, litigation is not "reasonably foreseeable" concerning the matters described above or in the United States' Complaint.  If any party previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described above or in the United States' Complaint, the Party is no longer required to maintain such litigation hold.  Nothing in this paragraph relieves any party of any other obligations imposed by this Order.

### VIII.  Duration

62.    The duration of this Order shall be for a period of four years from the Order's entry date.

63.    For the duration of this Order, this Court has exclusive jurisdiction over and is the venue for any dispute relating to this Order.

64.    If, prior to the expiration date of this Order, the United States determines that Kingston has failed substantially, whether intentionally or not, to satisfy the terms of this Order, or the United States has good cause to believe that any violations of RLUIPA are ongoing, or if the interests of justice so require, the United States, upon notice to the Defendant, may seek to extend the term of this Order.  If the Court has not granted the United States' request for extension by the time the Order is set to expire, the Order and its terms will remain in effect until the Court rules on the pending motion(s).

65.    The Court will dismiss this case with prejudice upon the expiration of this Order.

66.    The Parties may seek to terminate this Order prior to its expiration date if the Defendant demonstrates by a preponderance of the evidence that it has reached durable compliance—meaning continuous, full, effective, and lasting compliance—with this Order for at least two years. To do so, Kingston must show:

   a. It has abided by its prohibited conduct obligations (Section V.A.);

   b. It has amended its zoning ordinance to treat religious assemblies and institutions at least as well as nonreligious assemblies and institutions and to no longer unreasonably limit religious assemblies, institutions, or structures within Kingston (Section V.B.);

    c. It has ensured that the public, and future permit applicants by places of worship, receive notice of the Order and Kingston's commitment to RLUIPA (Section V.C);

    d. It has implemented complaint procedures and complied with its complaint reporting obligations (Section V.D.);

    e. It has provided notice and training to Covered Officials and complied with its training reporting obligations (Section V.E.); and

    f. It has maintained records and provided documents and information to counsel for the United States (Section V.F).

67.    Any other time limits for performance imposed by this Order may be extended by mutual written agreement of the Parties. The other provisions of this Order may be modified only by motion to the Court.

## IX.   Costs

68.    Except as provided in paragraph 60, each Party shall bear its own legal and other costs incurred in connection with this litigation, including costs related to the preparation and performance of this Order.

## X.   Scope and Execution

69.    This Order contains the complete agreement between the parties. No prior or contemporaneous communications, oral or written, between the parties that are not included herein shall be of any force or effect.

70.    The undersigned representatives of the Defendant and their counsel represent and warrant that they are fully authorized to enter into this Order.

71.    This Order is binding on the Defendant's successors, transferees, heirs, and assigns.

72.    The parties shall defend this Order against any challenge by any third party.  In the event that this Order or any of its terms are challenged in a court other than the United States District Court for the Middle District of Pennsylvania, the Defendants agree that they shall seek removal or transfer to this Court.

73.    The parties agree that they shall not, individually or in combination with another, seek to have any court declare or determine that any provision of this Order is illegal or invalid.

74.    Should any provision of this Order be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected, and any provision determined to be invalid or illegal shall be stricken from the Order.

**IT IS SO ORDERED this** _11th_ **day of** _February_ **, 2026.**

_Karoline Mehalchick_

'UNITED STATES DISTRICT COURT JUDGE

23

The undersigned apply for and consent to the entry of this Consent Order:

Dated: _Feb. 4_____, 2026

Brian D. Miller
United States Attorney

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

CARRIE PAGNUCCO
Chief
Housing and Civil Enforcement Section

Michael J. Butler
Civil Rights Coordinator
Assistant United States Attorney
Pa 81799
1501 N. Sixth Street, Suite 202
Harrisburg, PA 17102
Tel: (717) 221-4482
Michael.J.Butler@usdoj.gov

NOAH D. SACKS
KATIE LEGOMSKY
Trial Attorneys
Housing & Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M St. NE, 8th Floor
Washington, DC 20530
Tel: (202) 598-6587
Kathryn.Legomsky@usdoj.gov

Attorneys for Plaintiff United States of America

24

BOROUGH OF KINGSTON

Stephen G. Rhoads
MacMain Leinhauser PC
433 W. Market St., Suite 200
West Chester, PA 19102
Tel: (610) 936-9413
srhoads@macmainlaw.com
Attorney for Defendant
Borough of Kingston


Kate McMahen, Council President

Borough of Kingston


Dated: February 2, 2026

25

# APPENDIX A

## PUBLIC NOTICE OF THE CONSENT ORDER BETWEEN THE UNITED STATES AND THE BOROUGH OF KINGSTON, PENNSYLVANIA

Consistent with the United States Constitution and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), the Borough of Kingston will not apply its land use regulations in a manner that: (1) treats religious assemblies or institutions on less than equal terms with nonreligious assemblies or institutions; or (2) unreasonably limits religious assemblies, institutions or structures.

On [date], the United States District Court for the Middle District of Pennsylvania entered a Consent Order resolving the lawsuit of *United States v. Borough of Kingston*, Civ. No. [case no.] (M.D. Pa.), filed by the United States against the Borough of Kingston under RLUIPA, based on its 2023 Zoning Ordinance's treatment of places of worship and religious schools. A copy of the Consent Order is available at [Borough's website] or [Department of Justice's website].

RLUIPA prohibits governments from applying land use laws in a way that discriminates against religious uses of land, imposes unjustifiable substantial burdens on religious exercise, treats religious assemblies or institutions on less than equal terms with nonreligious assemblies or institutions, or totally or unreasonably excludes religious institutions. Additional details about RLUIPA are available on the United States Department of Justice's RLUIPA information page, available at https://www.justice.gov/crt/religious-land-use-and-institutionalized-persons-act.

If you believe that the Borough of Kingston or any land use or zoning body of the Borough of Kingston, or any other local government or municipality, has violated your rights under RLUIPA, please contact the U.S. Attorney's Office for the Middle District of Pennsylvania at (717) 221-4482 or the United States Department of Justice, Civil Rights Division, at (202) 514-4713. You may also email rluipa.complaints@usdoj.gov or write to either:

United States Attorney's Office           United States Department of Justice
Middle District of Pennsylvania           Civil Rights Division
Civil Rights Coordinator                  Housing and Civil Enforcement Section
1501 N. 6th Street, Box 202               4CON, 150 M Street NE, 8th floor
Harrisburg, PA 17102                      Washington, DC 20530

26

## APPENDIX B

## COMPLAINT FORM AGAINST THE BOROUGH OF KINGSTON

Name: _____

Address: _____

Telephone: _____

1. Please state briefly the nature of the service or request that you made of the Borough of Kingston related to the implementation of its zoning or land use laws (*e.g.*, special exception use permit, variance, re-zoning, etc.). Please include a description of the religious land use and the assembly or institution at issue:

_____

_____

_____

2. Please state briefly in what way(s) you believe the Borough of Kingston, or any land use or zoning body of the Borough, may have violated your rights in the exercise of your religion under the United States Constitution, federal law including the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), Pennsylvania law, or the Borough's Code or Ordinances through the implementation of its zoning or land use laws:

_____

_____

_____

If you believe the Borough of Kingston or any land use or zoning body of the Borough of Kingston has violated your rights under RLUIPA, please contact the U.S. Attorney's Office for the Middle District of Pennsylvania at (717) 221-4482 or the United States Department of Justice, Civil Rights Division, at (202) 514-4713. You may also email rluipa.complaints@usdoj.gov or write to either:

United States Attorney's Office     United States Department of Justice
Middle District of Pennsylvania    Civil Rights Division
Civil Rights Coordinator           Housing and Civil Enforcement Section
1501 N. 6th Street, Box 202        4CON, 150 M Street NE, 8th floor
Harrisburg, PA 17102               Washington, DC 20530

## APPENDIX C

## CERTIFICATION OF RLUIPA TRAINING
## AND RECEIPT OF CONSENT ORDER

I, _____, certify that I have received a copy of the Consent Order resolving *United States v. Borough of Kingston*, Case No. _____, filed by the United States in the United States District Court for the Middle District of Pennsylvania.

I further certify that on _____ [date], I attended a training on the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) and the Consent Order, that I read and understand the Consent Order, that all my questions concerning RLUIPA and the Consent Order were answered, and that I understand that my violation of the Consent Order or RLUIPA may result in court action against the Borough of Kingston.

_____
Signature

_____
Name

_____
Title

_____
Date

28